# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN D. LISLE, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-00163-NJR |
| | ) |
| SIERRA SENOR-MOORE, | ) |
| WARDEN LASHBROOK, | ) |
| CASSANDRA CHITY, | ) |
| SUSAN HILL, | ) |
| SERGEANT WALKER, | ) |
| LUITENET ENGELAGE, | ) |
| MATTHEW E. MAJOR, | ) |
| OFFICER BROOKS, | ) |
| ANA SCHOTT, | ) |
| CHRISTOPHER HIGGERSON, | ) |
| UNKNOWN PARTY, *1 – Nurse B*, | ) |
| JOHN/JANE DOES, *Officers and Nurses*, | ) |
| MOHAMMED SIDDIQUI, | ) |
| DR. LEVEY, *Mental Health*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

**ROSENSTENGEL, District Judge:**

Plaintiff Steven Lisle, an inmate in the custody of the Illinois Department of Corrections currently incarcerated in Menard Correctional Center ("Menard"), brings this *pro se* action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff asserts claims under the Eighth Amendment for deliberate indifference to serious medical needs, intentional disregard of a known suicide risk, and use of excessive force. He also alleges Illinois state law negligent spoliation claims. Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to

1

28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

The Complaint makes the following allegations: Plaintiff is a mentally ill inmate who has a history of suicide attempts that include self-mutilation while housed in the North II suicide watch unit.[1] (Doc. 1, p. 3). He uses sharp objects found in his cell to inflict internal and external injuries. (Doc. 1, pp. 3-4). Dr. Siddiqui, Dr. Levey, Mental Health Worker Hill, Nurse Schott, and Warden Lashbrook know it is unsafe to place him on suicide watch in North II because he has access to sharp objects that he can use to inflict internal and external injuries, which he has done repeatedly. (Doc. 1, pp. 3-11). Plaintiff has been placed on suicide watch in North II despite the unsafe conditions there. *Id.*

In January 2019, Plaintiff used a metal screw to cut himself and then swallowed the screw. (Doc. 1, pp. 3-4). After the screw passed in a bowel movement, he swallowed it again. *Id.* Siddiqui, Levey, Hill, Schott, and Lashbrook were aware Plaintiff had swallowed the metal screw and that he had been placed on suicide watch in North II. Despite this knowledge, they took no action to transfer him from North II to the health care unit where he would be under continuous observation. (Doc. 1, pp. 3-11). On January 3, 2019, Plaintiff again used the screw to cut himself in a suicide

---

[1] *See, e.g., Lisle v. Goldman*, SDIL Case No. 18-cv-01736-NJR-MAB (injuries from sharp objects found in cell); *Lisle, Jr. v. Butler*, SDIL Case No. 16-cv-00422-NJR-DGW (injuries from swallowing razorblades); *Lisle v. Butler*, SDIL Case No. 15-cv-00965-MJR-SCW (three suicide attempts).

attempt while in North II. (Doc. 1, p. 4). Nurse B witnessed his injuries but refused to provide medical care. (Doc. 1, pp. 4-5).

On January 7, 2019, Plaintiff caught Nurse Chitty giving him altered medication in an attempt to poison him. (Doc. 1, pp. 8, 11-12). The Effexor capsule she gave him had been opened and contained an unknown white powdery substance. *Id.* He confronted her and grabbed the medication. *Id.* Another nurse looked at the white powdery substance, stated it was not his medication and could be deadly, and walked away when Plaintiff told her that he wanted the substance tested. (Doc. 1, p.16). Nurse Chitty asked officers to assault Plaintiff to retrieve and/or destroy the poisoned medication. (Doc. 1, pp. 8-9, 11-12). Officers Walker, Engelage, Brooks, Major, and John Does (correctional officers) assaulted Plaintiff in an attempt to retrieve and/or destroy the evidence. (Doc. 1, pp. 8-9, 11-12, 14-14). During the assault, Plaintiff was punched, kicked, and choked. (Doc. 1, p. 7-9).

Plaintiff filed two grievances placing Warden Lashbrook on notice to save camera footage in the North II suicide watch unit from the 3:00 – 11:00 p.m. shifts on January 3, 2019, and January 7, 2019. (Doc. 1, p. 12). Despite the notice, Lashbrook destroyed the camera footage. *Id.*

Sometime after the January 7 incidents, Plaintiff mailed samples of his blood and the white powdery substance to Sierra Senor-Moore, Office of the Attorney General, State of Illinois, and requested the substance be tested. (Doc. 1, pp. 12-14, 25). Lisle notified the Court and all parties in SDIL case no. 18-cv-1736-NJR that he had mailed the letter to Senor-Moore. *Id.* Thereafter, Assistant Attorney General Christopher Higgerson notified Lisle that the letter had been received and destroyed because it potentially contained hazardous materials. (Doc. 1, p. 25).

## Preliminary Dismissals

Plaintiff alleges claims against each defendant in his or her individual and official capacities. (Doc. 1, p. 2). With the exception of Warden Lashbrook, Plaintiff may not sue any of the defendants in his or her official capacity. Individuals are not "persons" in their official capacities under Section 1983. Plaintiff can only bring claims against individuals who were personally involved in the deprivation of which he complains. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, to the extent that Plaintiff has attempted to bring claims against Siddiqui, Levey, Unknown Party (Nurse B), Walker, Engelage, Brooks, Major, John Does (correctional officers), Jane Doe (nurse), Chitty, Hill, Schott, Senor-Moore and Higgerson in their official capacities, those claims will be dismissed.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Siddiqui and Levey for failing to place Plaintiff in the health care unit for continuous observation after he swallowed a metal screw he had used in a suicide attempt in January 2019.

**Count 2:** Eighth Amendment deliberate indifference claim against Nurse B for denying Plaintiff medical treatment for injuries he sustained during a suicide attempt on January 3, 2019.

**Count 3:** Eighth Amendment deliberate indifference claim against Walker, Engelage, Brooks, Major, and John Does for denying Plaintiff medical treatment for injuries they inflicted on January 7, 2019.

**Count 4:** Eighth Amendment excessive force claim against Walker, Engelage, Brooks, Major, and John Does for assaulting Plaintiff by punching, kicking, and choking him on January 7, 2019.

**Count 5:** Eighth Amendment excessive force claim against Chitty for attempting to poison Plaintiff and inciting Walker, Engelage, Brooks, Major, and John Does to assault him on January 7, 2019.

| | |
|---|---|
| **Count 6:** | Eighth Amendment intentional disregard of a known suicide risk claim against Hill, Schott, Levey, and Lashbrook for allowing Plaintiff to be placed in the North II suicide watch unit which posed dangers to his health and safety in January 2019. |
| **Count 7:** | Illinois state law negligent spoliation claim against Chitty, Brooks, Walker, Engelage, Major, John Does, and Jane Doe for failing to preserve and/or destroying the white powdery substance Chitty used in an attempt to poison Plaintiff. |
| **Count 8:** | Illinois state law negligent spoliation claim against Lashbrook for destroying camera footage from the North II unit on January 3, 2019 and January 7, 2019 despite Plaintiff's request that it be saved. |
| **Count 9:** | Illinois state law negligent spoliation claim against Senor-Moore and Higgerson for destroying samples of blood and a white powdery substance that Plaintiff mailed to the Office of the Attorney General, State of Illinois, to be tested. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.

***Deliberate Indifference to Serious Medical Needs***

An Eighth Amendment claim based on the denial of medical care requires a plaintiff to show that (1) his medical condition was sufficiently serious, and (2) the defendants acted with deliberate indifference to his medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017). Siddiqui and Levey knew that Plaintiff had a history of attempting suicide and harming himself when placed in the suicide watch cells in the North II unit. In January 2019, Siddiqui and Levey knew Plaintiff had cut himself with a metal screw, swallowed the screw, passed the screw in a bowel movement, and swallowed the screw again. Despite this knowledge, Levey discharged

---

[2] An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff from the health care unit to be placed in the North II suicide watch unit while the screw was still in Plaintiff's body. Siddiqui was aware of the circumstances but took no action to remove Plaintiff from the North II unit and return him to the health care unit under continuous observation. The allegations are sufficient to allow **Count 1** to proceed against Siddiqui and Levey.

The allegations in **Count 2** sufficiently state a deliberate indifference against Nurse B based on her decision not to provide Plaintiff with medical treatment after his attempted suicide on January 3, 2019. Likewise, **Count 3** states a claim against Walker, Engelage, Brooks, Major, and John Does (correctional officers) because they denied Plaintiff medical treatment for injuries he sustained when they assaulted him. *See Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996) (failure to obtain medical assistance for an inmate who has been assaulted may constitute deliberate indifference to a serious medical need). Accordingly, **Count 2** will proceed against Nurse B and **Count 3** will proceed against Walker, Engelage, Brooks, Major, and John Does (correctional officers).

*Use of Excessive Force*

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (internal citations and quotation marks omitted). Walker, Engelage, Brooks, Major, and John Does (correctional officers) attacked Plaintiff at Chitty's request, punching, kicking, and choking him after the January 7, 2019 attempted poisoning incident. The purpose was to recover and destroy the evidence of the attempted poisoning and to deter Plaintiff from reporting Nurse Chitty's attempt to kill him. **Counts 4** and **5** sufficiently state claims against Walker, Engelage, Brooks, Major, and John Does (correctional officers) for use of excessive force and Chitty for inciting the excessive force.

6

*Intentional Disregard of a Known Suicide Risk*

Like all Eighth Amendment claims, a claim involving attempted suicide includes an objective and a subjective element, which requires the plaintiff to show: (1) the harm that befell him was objectively, sufficiently serious, and posed a substantial risk to his health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to his health and safety. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Suicide, even attempted suicide, qualifies as a serious harm. *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001). In the case of an attempted suicide, however, the second element requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide, and (2) intentionally disregarded the risk. *Collins*, 462 F.3d at 761 (citations omitted). Hill, Schott, Warden Levey, and Lashbrook knew Plaintiff had a history of attempting to kill and/or harm himself when placed in the North II suicide watch cells. Despite their awareness of his known risk of suicide, they allowed Plaintiff to be placed in North II during the month of January 2019. **Count 6** will proceed against Hill, Schott, Levey, and Lashbrook.

*Negligent Spoliation Claims*

The negligent spoliation claims in **Counts 7**, **8**, and **9** arise under Illinois state law. Although Illinois does not recognize a claim for intention spoliation of evidence, a plaintiff can bring a claim for negligent spoliation of evidence. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509-10 (7th Cir. 2007) (citing *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 273 (Ill. 1995)). Negligent spoliation is not an independent tort but rather is a type of negligence. *Id*. As such, Plaintiff must allege a duty to protect the evidence allegedly destroyed, a breach of that duty, causation, and damages. *Id*. As a general principle, there is no duty to preserve evidence under

Illinois law. *Olivarius v. Tharaldson Prop. Management, Inc.,* 695 F.Supp.2d 824, 829 (N.D.Ill. 2010) (citing *Boyd v. Travelers Ins. Co.,* 652 N.E.2d 267, 269–70 (Ill. 1995)). A duty to preserve evidence, however, may arise when a plaintiff satisfies both prongs of the following test: "(1) it arises by agreement, contract, statute, special circumstance, or voluntary undertaking (called the 'relationship' prong), and (2) a reasonable person should have foreseen that certain evidence at issue was material to a potential civil action (called the 'foreseeability' prong)." *Olivarius,* 695 F.Supp.2d at 829 (citing *Dardeen v. Kuehling,* 821 N.E.2d 227, 231 (Ill. 2004)).

Under the circumstances alleged in the Complaint, a special duty could not have arisen by agreement, contract, statute, or voluntary undertaking. Accordingly, Plaintiff must allege facts evidencing a "special circumstance" giving rise to a duty to preserve the camera footage. Illinois courts have explained that to establish a special circumstance "something more than possession and control are required, such as a request by the plaintiff to preserve the evidence and/or the defendant's segregation of the evidence for the plaintiff's benefit." *Martin v. Keeley & Sons, Inc.,* 979 N.E.2d 22, 31 (Ill. 2012).

The allegations in **Counts 7**, **8**, and **9** sufficiently state negligent spoliation claims. **Count 7** will proceed against Chitty, Walker, Engelage, Brooks, Major, and John Does (correctional officers) for destroying the majority of the white powdery substance used in the attempt to poison Plaintiff. And, against Jane Doe nurse for failing to preserve the evidence at Plaintiff's request. **Count 8** will proceed against Warden Lashbrook for failing to preserve and/or destroying camera footage from January 3, 2019 and January 7, 2019. And **Count 9** will proceed against Senor-Moore and Higgerson for destruction of the white powdery substance that Plaintiff mailed to the Office of the Attorney General to be tested for his attempted poisoning claim.

**Identification of Unknown Defendants**

Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of the unknown defendants Nurse B, John Does (correctional officers), and Jane Doe (nurse). *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Lashbrook is already named in her official capacity and shall respond to discovery aimed at identifying the unknown defendants associated with Menard. Guidelines for discovery will be set by the undersigned judge. Once the names of the unknown defendants are discovered, Plaintiff shall file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint.

**Disposition**

**IT IS HEREBY ORDERED** that **Count 1** will proceed against **Siddiqui** and **Levey**. **Count 2** will proceed against **Unknown Party (Nurse B)**. **Count 3** will proceed against **Walker, Engelage, Brooks, Major,** and **John Does (correctional officers). Count 4** will proceed against **Walker, Engelage, Brooks, Major,** and **John Does**. **Count 5** will proceed against **Chitty**. **Count 6** will proceed against **Hill, Schott, Levey, a**nd **Lashbrook**. **Count 7** will proceed against **Chitty, Walker, Engelage, Brooks, Major, John Does,** and **Jane Doe (Nurse)**. **Count 8** will proceed against **Lashbrook**. **Count 9** will proceed against **Sierra Senor-Moore** and **Christopher Higgerson**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **Lashbrook** (individual and official capacities), **Siddiqui, Levey, Walker, Engelage, Brooks, Major, Chitty, Hill, Schott, Lashbrook, Sierra Senor-Moore** and **Christopher Higgerson** (individual capacities): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a

copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on Defendants **Unknown Party** (Nurse B)**, John Does** (correctional officers), and **Jane Doe** (nurse) until Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that defendant's current work address, or, if not known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact

that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff files a Complaint. *See* 28 U.S.C. § 1915(b)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 18, 2019**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of this lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.