IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN D. LISLE, JR., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 19-cv-163-RJD |
| | ) |
| SIERRA SENOR-MOORE, et al., | ) |
| | ) |
|    Defendants. | ) |
| | ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Brooks, Chitty, Engelage, Higgerson, Lashbrook, Major, Senor-Moore, and Walker (Doc. 79). Plaintiff filed a Response (Doc. 82). As explained further, Defendants' Motion is GRANTED.

**Background**

Plaintiff is an inmate of the Illinois Department of Corrections ("IDOC") and filed this suit pursuant to 42 U.S.C. 1983. Plaintiff alleges that his Eighth Amendment rights were violated at Menard Correctional Center on January 7, 2019, when he caught Defendant Chity (a nurse) attempting to poison him with an unknown white powdery substance. Plaintiff alleges that he grabbed the substance from Nurse Chity, but she asked Defendants Walker, Engelage, Brooks, and Major ("the defendant correctional officers") to assault Plaintiff and either retrieve or destroy the substance. Plaintiff then alleges that the defendant correctional officers punched, kicked, and choked him. Plaintiff contends that he submitted two emergency grievances to Warden

Jacqueline Lashbrook, asking her to save the camera footage from the North II suicide watch unit (Doc. 1, p. 12).

Plaintiff alleges that he sent a sample of the white powdery substance to Sierra Senor Moore, Office of the Illinois Attorney General, asking her to test the samples. Christopher Higgerson, Assistant Attorney General, notified Plaintiff that the substance was destroyed. Plaintiff's Complaint also alleges that his Eighth Amendment rights were violated at Menard Correctional Center on January 3, 2019, when he attempted to commit suicide and various defendants denied him medical care, but those claims were severed into another case, Case No. 19-cv-1254-SMY. The instant case proceeds on the following claims.

> Count 3: Eighth Amendment deliberate indifference claim against Walker, Engelage, Brooks, and Major for denying Plaintiff medical treatment for injuries they inflicted on January 7, 2019
>
> Count 4: Eighth Amendment excessive force claim against Walker, Engelage, Brooks, and Major for assaulting Plaintiff by punching, kicking, and choking him on January 7, 2019
>
> Count 5: Eighth Amendment excessive force claim against Chitty for attempting to poison Plaintiff and inciting Walker, Engelage, Brooks, and Major to assault him on January 7, 2019
>
> Count 7: Illinois state law negligent spoliation claim against Chitty, Brooks, Walker, Engelage, and Major for failing to preserve and/or destroying the white powdery substance Chitty used to try to poison Plaintiff
>
> Count 9: Illinois state law negligent spoliation claim against Senor-Moore and Higgerson for destroying samples of blood and a white powdery substance that Plaintiff mailed to the Office of the Attorney General, State of Illinois, to be tested
>
> Count 10: Illinois state law negligent spoliation claim against Lashbrook for destroying camera footage from the North II unit on January 7, 2019, despite Lisle's request that it be saved

Defendants filed the instant motion, contending that Plaintiff failed to exhaust his

administrative remedies on Counts 3-5.[1]  Defendants point to Plaintiff's grievance records from Menard Correctional Center and the Administrative Review Board, none of which are related to the issues in this case.  In his Complaint, Plaintiff contends that he submitted an emergency grievance to Warden Lashbrook on January 8, 2019, but he never received a response (Doc. 1, p. 18).  He further explains that while he was on crisis watch on January 5, 2019, he had asked Correctional Officer McTaggert to submit an emergency grievance for him (related to Plaintiff's allegations regarding his suicide attempt on January 3, 2019), but he never received a response.  He alleges that he sent an inquiry about the January 5 and 8, 2019 grievances to his counselor, and was told there was no record of those grievances (Doc. 1, p. 28).  Plaintiff filed his Complaint on February 11, 2019.

## *Pavey* Hearing

On November 23, 2020, the Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).  Plaintiff testified that while he was on crisis watch, he had no access to writing utensils or paper, and that is why he had to ask C.O. McTaggert to submit an emergency grievance for him regarding incidents that occurred on January 3 and January 7, 2019.  Medical records presented at the hearing revealed that Plaintiff was still on crisis watch on January 8, 2019. Plaintiff testified that once he was released from crisis watch, he submitted another grievance related to his allegations in this lawsuit.   He testified that when he wrote to his counselor regarding the January 5 and 8, 2019 grievances, he was actually only asking her about one grievance.  The counselor responded, stating that "grievance dated 1/5/19 and 1/8/19 are not in the computer. Grievance office has not received them."  Plaintiff does not know when he received this response,

---

[1] Defendants request that once the Court grants them summary judgment on Counts 3-5, Counts 7, 9, and 10 should be dismissed because they are pendant state law claims for which the Court should relinquish jurisdiction.

but it was before he filed suit on February 11, 2019. Later in the hearing, Plaintiff testified that he submitted an emergency grievance dated January 5, 2019, to Warden Lashbrook and a second grievance on January 8, 2019.

C.O. McTaggert testified that he was working at Menard Correctional Center in January 2019, though he is currently working at a different institution. He does not remember ever writing a grievance for any offender at Menard, and he believes that it is impossible he could have forgotten writing a grievance for an offender. The shift roster shows that he was not working at Menard on Monday, January 7, 2019. C.O. McTaggert testified that he also would not have worked on Tuesday, January 8, 2019, because during that time period he did not work on Mondays and Tuesdays.

## Legal Standards

**Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light

most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

*Exhaustion Requirements*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 Ill. Admin. Code § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id.* §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final

determination within 6 months of receipt of the appeal.  20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer.  *Id.* § 504.840.  If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender.  *Id.*  Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility.  *Id.* at § 504.870.

An inmate is only required to exhaust the administrative remedies that are *available* to him.  *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002) (emphasis added).  Administrative remedies are unavailable to an inmate when prison officials do not respond to his grievance(s).  *Id.*; *see also Wyma v. Siddiqui*, 18-cv-92-NJR, 2019 WL 570615, *3 (Feb. 11, 2019).  When a prisoner is in imminent danger, administrative remedies may effectively be unavailable to him.  *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010) ("If a prisoner has been placed in imminent danger of serious physical injury by an act that violates his constitutional rights, administrative remedies that offer no possible relief in time to prevent the imminent danger from becoming actual harm can't be thought available.").

## Discussion

Plaintiff contends that he bypassed administrative remedy exhaustion requirements in this case because he was in "imminent danger" related to Nurse Chity attempting to give him rat poison.  There is no "imminent danger" exception to exhaustion.  *Id*.  A prisoner may only file

a §1983 suit without exhausting his administrative remedies if he can establish that he was facing a threat so imminent that waiting to exhaust his administrative remedies would provide no relief to him-effectively rendering administrative remedies "unavailable." *Id*.  Inmates in Illinois have an emergency grievance option available to them, and it would be rare that a situation would arise where filing a lawsuit would provide a prisoner potential relief sooner than submitting an emergency grievance.  *See id*. at 1174-75.  None of the evidence presented indicates that when Plaintiff filed suit on February 11, 2019, he faced a danger that would likely harm him before he could receive a response to an emergency grievance.

By arguing that Warden Lashbrook destroyed his emergency grievances, Plaintiff is essentially arguing that administrative remedies were unavailable to him.  However, the Court cannot reasonably infer that Warden Lashbrook destroyed Plaintiff's grievances because Plaintiff's testimony regarding his submission of these two grievances is wholly unreliable.  Plaintiff's Complaint (filed approximately one month after the events at issue) states that he asked C.O. McTaggert to submit an emergency grievance for him on January 5, 2019.  Doc. 1, p. 18.  Then, according to the Complaint, Plaintiff submitted his own emergency grievance on January 8, 2019 regarding the events at issue in this case.  At the *Pavey* hearing, Plaintiff testified that the reason he asked C.O. McTaggert to submit a grievance was because he was on crisis watch and did not have access to paper/writing utensils.  However, Plaintiff's medical records presented at the *Pavey* hearing show that Plaintiff was still on crisis watch on January 8, 2019.  Thus, he would have not been able to submit a grievance on January 8, 2019 as his Complaint states that he did.

In what appeared to be an attempt to rectify this inconsistency, Plaintiff went on to testify at the *Pavey* hearing that there was not a January 5 *and* a January 8 grievance-there was one grievance that addressed the events of January 5-8, 2019, and C.O. McTaggert submitted that

grievance for him, then Plaintiff submitted his own emergency grievance once he was released from crisis watch. This testimony is contradicted by the document Plaintiff submitted to his grievance counselor in which he inquired about a January 5 *and* a January 8 grievance. Doc. 1, p. 28. Later in the hearing Plaintiff testified that C.O. McTaggert submitted an emergency grievance for him on January 5, 2019, but then Plaintiff was attacked on January 7, 2019 and another emergency grievance was submitted on January 8.

If Plaintiff did, in fact, ask Officer McTaggert to submit a grievance for him on January 5, 2019, that grievance could not have mentioned the events that took place on January 7, 2019. Plaintiff could not have submitted an emergency grievance on his own behalf on January 8, 2019, because he was on crisis watch. C.O. McTaggert could not have submitted an emergency grievance for Plaintiff on January 8, 2019 because C.O. McTaggert was not working on that date.

That leaves one final option-could Plaintiff have submitted a grievance regarding the January 7, 2019 events after he was released from crisis watch? Plaintiff testified that he did, but he also testified that he only submitted two grievances related to this suit and the severed suit, Case No.19-cv-1254-SMY. The letter Plaintiff sent to his counselor clearly refers to two grievances that were submitted on or before January 8, 2019. Doc. 1, p. 28. Plaintiff was still on crisis watch on January 8, 2019. Considering the multiple contradictions in Plaintiff's testimony, his Complaint, and the evidence presented, the Court cannot reasonably infer that Warden Lashbrook (or anyone else) destroyed Plaintiff's alleged grievances. Accordingly, the emergency grievance process was available to Plaintiff, but he failed to fully exhaust his administrative remedies prior to suit. Defendants are entitled to summary judgment on Counts 3-5.

### Plaintiff's Spoliation Claims

Counts 7, 9, and 10 are state law spoliation claims. Now that Plaintiff's §1983 claims are

dismissed, the Court should decline to exercise jurisdiction over Plaintiff's state law claims. *RWJ Management Co., Inc. v. BP Products North America, Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). While there are limited circumstances where it would be appropriate for the Court to continue hearing the state law claims, none of those circumstances are present in this case. *See id*. at 480. Consequently, Counts 7, 9, and 10 are dismissed without prejudice.

## Conclusion

For the reasons set forth above, the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Brooks, Chitty, Engelage, Higgerson, Lashbrook, Major, Senor-Moore, and Walker is **GRANTED**. This matter is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: December 9, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**